UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH W. WALSH, )
)
    Plaintiff, )
)
v. ) C.A. NO. 04-10304-MBB
)
PACCAR, INC., )
)
    Defendant. )
)

JOINT PRETRIAL MEMORANDUM

Plaintiff, Joseph Walsh ("the plaintiff") and defendant, PACCAR Inc. ("PACCAR") (collectively referred to as "the parties") submit this joint pretrial memorandum in accordance with the Court's Order of July 13, 2006 and Local Rule 16.5.

I.    Concise Summary of the Evidence

    A.    Plaintiff

Plaintiff expects the evidence to show that the defendant was the designer, manufacturer, marketer and seller of a 1988 Kenworth tractor, bearing vehicle identification number 1XKEDB9X7JJ373560, which was purchased, used, by the plaintiff in or about 1997 (the "truck").

On June 27, 2002, while driving the truck with a load from Massachusetts to Florida, plaintiff stopped in Branford, Connecticut, as he noticed a potential problem with the refrigerated unit he was hauling. He got out of the truck and climbed the steps on the

driver's side fuel tank to access the connection wires and hoses to the refrigerated unit behind the cab of the truck. As he turned to depart the area, he struck a hose attached to the top of the fuel tank and began to feel immediate pain in his right leg, like it was on fire. As he jumped down from the back of the truck in extreme pain, he saw that a stream of scalding hot liquid was shooting up from a split in the hose that ran into the top of the fuel tank. While still in pain, he shut down the truck and cut the split end of the hose off and reconnected the fitting so it would not leak. He then limped into the rest area, where it was discovered that the hot liquid had completely scalded the skin on the back of his right calf and ankle. He was then taken by ambulance to Bridgeport Hospital where he underwent skin grafts and remained in the burn unit for 12 days. The medical bills for this treatment amount to $37,446.89. Plaintiff also missed several weeks of work and the wages associated therewith. He is left with permanent scarring and disfigurement of his leg, as well as occasional pain and numbness in the burned area.

     Plaintiff expects the evidence to show that the defendant was negligent in designing, manufacturing, marketing and sale of the truck. The hose that broke was part of a heating system for the diesel fuel in the driver's side fuel tank. It ran from the engine cooling system, through the hose, then through a coil in the fuel tank, thereafter returning to the cooling system. As such, it circulated scalding cooling fluid through the fuel tank. The connection to the fuel tank is an exposed connection, located directly in the path of travel for persons to access the back of the cab of the truck and any connections to a trailer attached to the truck. There is no warning of the danger of the liquid in the hose,

nor is there any protection for the connection to stop users from coming in contact with the connection.

Plaintiff asserts that the design of the connection is defective and unreasonably dangerous and that defendant was negligent in locating the connection where it did, failing to design the connection so as to avoid contact with expected users, failing to locate the connection in another, less accessible area, failing include some type of protection for the connection such as an all steel fitting (as opposed to a rubber hose type connection), failing to locate the heater in the passenger side tank (on which there are no steps), and failing to warn expected users of the danger of coming in contact with the fitting/rubber hose connection. All of these could have been done for little cost according to the manufacturer's Rule 30(b)(6) deposition designee.

B.   Defendant

PACCAR expects the evidence to show that in 1988 the subject 1988 Kenworth Model K100E truck ("the truck") was manufactured and assembled in part by Kenworth Truck Company, an unincorporated division of PACCAR Inc. The truck is a cabover truck which had side mounted fuel tanks on the left and right side. The truck was part of a sale of a fleet of trucks to Werner Enterprises and the components of the truck were requested and/or specified by the original purchaser. The fuel tank contained an Artic Fox Fuel Tank Heater whose purpose was to heat the fuel for the engine. The Artic Fox heater worked to heat the fuel by moving warm coolant from the engine through the heavy duty tubing in the fuel tank. The truck also had two steps on the left side fuel tank which provided rear frame access and the ability to connect the tractor electrical and air

3

supply to the trailer. To the left of the steps was a grab handle to ensure "three points of contact" when the access or egress was being utilized. In addition, there was a large white sticker on the right hand top of the fuel tanks that said "No Step." A Final Chassis Bill of Materials, a service and operations manual, and other documents accompanied the sale of the truck to Werner. There were no warranty related repairs to the Artic Fox Heater, the tubing or any component part of either gas tank.

On or about October 25, 1997, the plaintiff purchased the truck from a private individual for $12,000. At the time of purchase, the truck had 3,064,789 miles on it. The plaintiff inspected the truck and observed two hoses coming out of the left fuel tank, but never questioned what they were for. It is undisputed that the hoses were clearly visible and evident at all times. At the time of the purchase, the plaintiff had been an owner/operator of approximately six other cabover trucks of similar configuration. The one alleged difference between the other cabover trucks that the plaintiff had used and the truck at issue was the presence of the Artic Fox heater and the hoses coming out of the fuel tank. The plaintiff did not receive any documents related to the truck including, but not limited to, the operations and service manual, the final chassis bill of materials or repair and maintenance records. The plaintiff had no interaction with Kenworth or PACCAR in connection with the purchase of the truck.

On June 27, 2002, the plaintiff was driving a load of crab from Massachusetts to Florida when a light came on in his truck signaling a potential problem. The plaintiff pulled into a rest area in Bridgeport, Connecticut to investigate the problem. The plaintiff climbed up the steps on the left fuel tank to gain access to the rear deck plate of the cab.

4

After completing a brief inspection, the plaintiff determined that he needed his tool box and he turned to climb down from the truck, via the steps on the fuel tank, to obtain his tools. As he was climbing over the fuel tank, the plaintiff stepped with his right foot on one of the two hoses which were attached to the fuel tanks via a metal coupling. The plaintiff states that a small pin hole developed in the hose, that hot radiator fluid began to "spew" from the tiny pin hole, and that he sustained severe burns to his right leg below the knee. The plaintiff cut off the portion of the hose where the small pin hose had developed, reattached the hose to the tank via the coupling, and discarded the portion of the hose at issue. At the time of the accident, the plaintiff knew that stepping on a hose, particularly a hose that comes out of the fuel tank, might be dangerous. The plaintiff has no evidence that the hose or clamp were original equipment and/or maintained in accordance with the manufacturer's instructions.

The plaintiff was an inpatient at Bridgeport Hospital from June 27, 2002 to July 9, 2002 due to the burns to his right leg. The plaintiff sought no additional treatment for his leg after being discharged from the hospital other than to have the stitches removed from his graft.

II. Statement of the facts established by the pleadings, stipulations of counsel, and admissions.

The plaintiff and PACCAR are currently working on determining whether any agreement can be reached as to stipulated facts. The only current stipulation is

    i. The plaintiff has agreed to dismiss Count II (breach of implied warranty of merchantability) and Count III (breach of the implied warranty of fitness for a

particular purpose) of his complaint and to proceed solely on Count I (negligence).

III. Contested Issues of Fact

    i. Defendant was the designer, manufacturer, marketer and seller of the truck at issue in this action;

    ii. Plaintiff sustained burns to his right leg as a result of being sprayed with cooling system fluid from the truck on the date of the incident;

    iii. As a result of the injury to his leg, plaintiff was an in-patient in Bridgeport Hospital for 12 days;

    iv. As a result of the injury, plaintiff incurred $37,446.89 in medical expenses.

    v. The 1988 Kenworth Model K100E ("the truck") was designed, manufactured, and assembled in part in 1988 by Kenworth Truck Company, an unincorporated division of PACCAR, Inc.

    vi. The truck was part of a sale of a fleet of trucks to Werner and the components of the truck, including the Arctic Fox Fuel Tank Heater were requested and/or specified by the original purchaser.

    vii. The Arctic Fox Fuel Tank Heater was located in the fuel tank and its purpose was to heat the fuel for the engine by moving warm coolant from the engine through the heavy duty tubing in the fuel tank.

viii. The truck had two steps on the fuel tank which provided rear frame access and the ability to connect the tractor electrical and air supply to the trailer.

ix. To the left of the steps, was a grab handle to ensure "three points of contact" when the access or egress was being utilized.

x. There was a large sticker on the right hand top of the fuel tank that said "No Step."

xi. A Final Chassis Bill of Materials, a Kenworth Operation and Service Manual, and a Kenworth pre-delivery inspection record accompanied the sale of the truck to Werner.

xii. When the plaintiff was purchasing the truck, he did not rely on any kind of statements or representations made by Kenworth or PACCAR.

xiii. The plaintiff had no direct communications with PACCAR or Kenworth in connection with his decision to purchase the truck.

xiv. The plaintiff had purchased the truck from a private individual on October 25, 1997 for $12,000.

xv. At the time that the truck was purchased by the plaintiff, it had 3,064,789 miles on it.

xvi. Prior to purchasing the truck, the plaintiff inspected and drove the truck, and observed the two hoses coming out of the fuel tank.

xvii. The plaintiff had never seen lines/hoses coming from the top of the fuel tank in a cabover truck before and they were very obvious.

xviii.   At the time of the purchase of the truck, the plaintiff had been an owner/operator of approximately six other cabover trucks of similar configuration.

xix.   The plaintiff had no interaction with Kenworth or PACCAR in connection with the purchase of the truck and no representations were made by Kenworth or PACCAR with respect to the plaintiff's purchase of the truck.

xx.   The plaintiff did not contact either Kenworth or PACCAR to ask for a copy of the operations and service manual or the final chassis bill of materials that identified all of the component parts of the truck.

xxi.   The accident took place on June 27, 2002 in Connecticut while the plaintiff was on his way to Florida to transport a load of goods that he had picked up in Massachusetts.

xxii.   Prior to his accident on June 27, 2002, the plaintiff knew that it was not appropriate to step on the fuel tank of the truck.

xxiii.   Prior to his accident on June 27, 2002, the plaintiff knew that stepping on a hose, particularly a hose that comes out of the fuel tank, might be dangerous.

xxiv.   The accident took place when the plaintiff was exiting the rear deck of the truck.

xxv.   Specifically, the plaintiff stepped on the hoses on the gas tank with his steel-toed shoes.

xxvi.   Following the plaintiff's accident on June 27, 2002, the plaintiff cut off the portion of the hose which had a pinhole leak in it, and reattached the remaining section of the hose and screwed in the coupling. The section of the hose which allegedly failed was thrown out by the plaintiff. No photographs of the hose were taken and nobody from PACCAR was permitted to inspect it.

xxvii.  The plaintiff was an inpatient at Bridgeport Hospital for 12 days, where he was treated for burns below his right knee and down around his ankle on the right side.

xxviii. The plaintiff sought no additional medical treatment for his injuries other than to have sutures removed from his skin graft.

xxix.   The plaintiff had no restrictions placed on his work abilities when he returned to work.

xxx.    Most of the scars that the plaintiff had on his right leg are gone.

xxxi.   As a result of the accident, the plaintiff is not contending that he was unable to enjoy certain activities.

xxxii.  Prior to the accident, the plaintiff had walked into and exited from the deck plate of the truck on approximately 15 to 20 other occasions without incident.

xxxiii. The plaintiff has no evidence that the hose or the clamp at issue on the truck were original equipment and/or maintained in accordance with the manufacturer's instructions.

    xxxiv.    The plaintiff has no evidence that the truck, as manufactured, did not meet or exceeded all industry standards.

    xxxv.    At the time of the plaintiff's accident, he was working as an owner operator for Jay Brian Transport of Danvers, Massachusetts. In that capacity, the plaintiff received a flat sum of money for transporting each load. The plaintiff did not receive any benefits.

    xxxvi.    The plaintiff has no evidence that the truck did not comply with applicable industry laws, regulations, or standards.

    xxxvii.    The first notification that PACCAR had of the accident was shortly after suit was filed on January 15, 2004

    xxxviii.    The plaintiff's configuration of the rear cab has been altered since the plaintiff's accident and prior to suit being filed against PACCAR.

    xxxix.    The plaintiff has agreed to dismiss Count II (breach of implied warranty of merchantability) and Count III (breach of the implied warranty of fitness for a particular purpose) of his complaint and to proceed solely on Count I (negligence).

IV.    <u>Jurisdictional Issues</u>

The parties are not aware of any jurisdictional issues that need to be addressed by the Court at this time.

V.    <u>Questions Raised by Pending Motions</u>

There are no motions currently pending before this Court.

VI.    Issues of Law Including Evidentiary Questions Together with Supporting <u>Authority</u>

Plaintiff states there are none at present.

PACCAR states that following evidentiary issues will need to be decided by the Court:

A. Whether the plaintiff should be precluded from offering testimony as to the hose allegedly involved in the accident because of the plaintiff's spoliation of evidence.

The plaintiff spoliated evidence in this case by failing to preserve the portion of the hose which allegedly developed the hole and resulted in the plaintiff's injuries and as such, he should be precluded from making any reference to the hose segment at trial pursuant to Rule 104(a) of the Federal Rules of Evidence and applicable case law. Persons or entities involved in litigation, or who know that they will likely be involved, have a duty to preserve evidence for use by others with the potential to become involved in the litigation. Thomas v. Bombardier Rotax Mororenfabril, 909 F. Supp. 585, 586 (N.D. Ill. 1996); Fletcher v. Dorchester Mut. Ins. Co., 773 N.E. 2d 420, 425-26 (Mass. 2002); Kippenham v. Chaulk Services, Inc., 697 N.E. 2d 527, 530 (Mass. 1998). A party violates this duty by failing to preserve or affirmatively destroying evidence before the opposing party has had an opportunity to inspect it. See Sacramona v. Bridgestone/ Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997). Known as "spoliation of evidence," courts have imposed sanctions such as exclusion and dismissal for the destruction of evidence resulting in prejudice to party. Sacramona, 106 F.3d 16 446-48; Nally v. Volkswagen of America, Inc. 405 Mass. 191, 197-98 (1989); Bolton v. Massachusetts Bay Transp. Auth., 32 Mass. App. Ct. 654, 657 (1992). The Court's inherent powers

authorize it to impose such sanctions. Sacramona, 106 F.3d at 197; Chapman v. Bernanrd's Inc., 167 F. supp.2d 406, 413 (D. Mass. 2001).

District Court's have inherent power to exclude evidence that has been improperly damaged or lost by a party where necessary to protect the non-offending party from undue prejudice. See Chapman, 167 F. Supp. 2d at 413. Factors to be considered in determining whether to exclude evidence as a sanction for spoliation to include: (1) whether the adverse party was prejudiced by the destruction of the evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the destruction was in good or bad faith; and (5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned. Id.; see also Trull v. Volkswagen of Am, Inc., 187 F.3d 88, 95 (1st Cir. 1999). In the present case, it is undeniable that PACCAR has been prejudiced by the failure of the plaintiff to retain the hose segment which allegedly failed. The condition of the hose segment prior to and at the time of the plaintiff's accident is important to PACCAR's defense.

The plaintiff will no doubt argue that the requested sanction is inappropriate in the absence of any bad faith on the part of the plaintiff. The pertinent case law makes clear, however, that courts may impose sanctions on parties who destroy or lose evidence or allow evidence to be lost, without regard to their level of intent. See Trull, 187 F.3d at 95 ("our case law does not require bad faith or comparable bad motive"); Sacramona, 106 F.3d 447. Consequently, even a negligent failure to take steps to preserve evidence may serve as the basis for a finding of spoliation. Sacramona, 106 F.3d at 447 (including sanctions are appropriate even when evidence was mishandled through carelessness, if

prejudice results); Nally, 539 N.E. 2d at 198 (for spoliation sanction, loss of evidence is the key factor, regardless of whether the loss was deliberate or negligent)

  B. Whether the plaintiff should be precluded from introducing evidence of lost wages on the grounds that such information is too speculative and <u>because no evidence has been produced to substantiate such a claim</u>.

  The plaintiff seeks to recover for the lost income or profits that he would have earned during the four weeks that he was out of work allegedly due to the accident. Specifically, the plaintiff alleges that he lost approximately $20,000 in lost wages. The plaintiff has not produced any documentation or evidence to substantiate the lost wage claims. Pursuant to Fed.R. Civ. P. 26 (a)(1)(C), the plaintiff is required to disclose at the onset of the case, a computation of damages for which recovery is sought and to make available for inspection and copying, all non-privileged documents on which the computation is based. The plaintiff's automatic disclosures stated that the lost wages claim was "incomplete at this time" and no documents have been produced to date. During his deposition, the plaintiff testified that he was working as an owner/operator for Jay Brian Transport in Danvers, Massachusetts at the time of the accident and that he received a gross payment for each load that he picked up and delivered. From that gross amount, the plaintiff was required to pay insurance, upkeep, tolls, fuel and other expenses. PACCAR affirmatively sought the production of the plaintiff's employment records and tax records to evaluate the plaintiff's lost wages claim; however, none were produced. In addition, although an authorization for the release of employment records was sent to Jay Brian Transport, the only document produced was a 1099 Form for 2004. Thus, the plaintiff does not have evidence to support any of the following facts that

would be needed to pursue a claim for lost wages: (1) evidence that Jay Brian Transport would have been able to provide him with work during the four weeks that he was out; (2) evidence that Jay Brian Transport would have paid him $5,000 a week for this work; and (3) evidence as to what net income he would have received as a result of that work. While it is clearly the plaintiff's burden to prove his damages, PACCAR has undertaken its own defensive discovery on this issue and it has still not been able to obtain the necessary information to evaluate the claim.

In accordance with well settled first circuit precedent, a plaintiff's claim for lost profits damages, must proffer evidence which establishes the amount of lost profits "with sufficient certainty." Cahill v. TIG Premier Ins. Co., 47 F.Supp.2d 87, 90 (D.Mass. 1999), citing Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488, 631 N.E.2d 995 (1994). "Lost profits damages cannot be recovered when they are 'remote, speculative, hypothetical, and not within the realm of reasonable certainty...'" Cahill, 47 F.Supp.2d at 90, citing Augat, Inc., 417 Mass. at 488 n. 4.

In Cambridge Plating Co., Inc. v. Napco, Inc., the Court found that the plaintiff has the burden of providing a reasonably certain basis to believe that the defendant's wrongful conduct caused the loss of anticipated profits. Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 772 (1st Cir.1996), citing Augat, Inc. v. Aegis, Inc., (Augat I), 409 Mass. 165, 565 N.e.2d 415 (1991) (plaintiff must prove losses would not have occurred but for the wrongful conduct). Additionally, a plaintiff must prove "with sufficient certainty the amount of those anticipated profits." Cambridge Plating Co., 85 F.3d at 772. Moreover, "[t]he nature of the business or venture upon which the

anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts." Cambridge Plating Co., 85 F.3d at 772, quoting Augat, Inc., 417 Mass. at 489 (internal quotation omitted). "Because every calculation of lost profits has some element of uncertainty, a plaintiff need not calculate lost profits with mathematical exactness; [however], they cannot be remote, speculative [or] hypothetical." Id. (internal quotations omitted).

> C. Whether the plaintiff's claim of negligence should be permitted to go to the jury when the plaintiff does not have expert testimony to support the claim.

The plaintiff has agreed to dismiss his claims for breach of warranty and is proceeding solely with his negligence claim. The plaintiff is not intending to call an expert witness to support his claim of negligent design. Under Massachusetts law, a plaintiff needs to present expert testimony in a product liability action unless it is the type of case where a jury can find, of their own lay knowledge, that there exists a design defect. Smith v. Ariens Co., 375 Mass. 620, 625 (1978). PACCAR submits that this claim does not fit within the limited category of cases where expert testimony is not needed. The plaintiff alleges that the placement of the Artic Fox Heater in the left fuel tank, the location of the steps on the side mounted fuel tanks, the type of material used for the hoses, and the absence of a guard over theses hoses was negligent. In order to prove his case, the plaintiff will have to present testimony of the design of the side mounted fuel tank and the location of the Artic Fox Heater in that tank, the standards of design at the relevant time period, alternatives to the design, as well as the expense of such alternatives.

15

    D.    Whether the plaintiff should be permitted to testify regarding the appearance of "lesions" on his skin in the area of his burn when he is not alleging that the lesions are causally connected to the burn and he has not produced any medical records to support this contention.

The plaintiff testified at his deposition that approximately five or six months following the accident at issue, he began to develop "lesions" on his skin. While these lesions on his skin initially developed in the area of the burn, he testified that the lesions continued to migrate to other parts of his body. The plaintiff has offered no medical evidence that there is a connection between the "lesions" and his accident and June, 2002, and the plaintiff is not seeking recovery for such lesions. PACCAR requests that the plaintiff be precluded from offering testimony on these lesions as any probative value which such testimony may have (which PACCAR submits is none) is greatly outweighed by the potential prejudicial impact on PACCAR.

VII.    Requested Amendments to the Pleadings

    The parties do not request any amendments to the pleadings at this time.

VIII.    Additional Matters to Aid in the Disposition of the Action

    Plaintiff would request a jury view the truck at issue in this case.

    PACCAR states that addressing some or all of the evidentiary issues in advance of the trial may aid in the disposition of the action.

IX.    The Probable Length of the Trial

    The parties anticipate that the trial will last approximately three days.

X.  Names and Addresses of Witnesses who Shall Testify at the Trial and the Purpose of the Testimony of Each Witness

    A.  Plaintiff's Witnesses

    1.  Joseph W. Walsh, 13625 S.W. 196th Street, Miami FL 33177;

    2.  Patricia Walsh, 13625 S.W. 196th Street, Miami FL 33177;

    3.  Rule 30(b)(6) designee of Defendant (portions of deposition testimony).

    B.  Defendant's Witnesses

In addition to any of the witnesses to be called by the plaintiff, PACCAR anticipates calling the following fact witnesses at the trial of this action:

Richard Sedgley  
Kenworth Truck Company  
Product Safety & Compliance  
10630 NE 38th Place  
Kirkland, WA 98033    (fact and expert)

Steve Talkowsky  
Seven Fairmont Road  
Peabody, MA    (fact)

Mr. Jay DiBattista  
Jay Brian Transport  
Two Commercial Street, #206  
Sharon, MA 02067    (fact)

PACCAR anticipates calling the following expert witness at the trial of this action:

William M. Howerton  
Scientific Boston Inc.  
1120 Massachusetts Avenue  
Boxborough, MA 01719

17

The qualifications of Mr. Howerton are set forth in the curriculum vitae attached hereto as Exhibit A.

XI.  Proposed Exhibits

    A.  Plaintiff

    1.  Medical Records and bills from Bridgeport Hospital;

    2.  Photographs of truck;

    3.  Owners Manual to truck.

    B.  Defendant

In addition to the proposed exhibits of the plaintiff, which PACCAR reserves the right to introduce, PACCAR anticipates using the following exhibits at trial:

Kenworth Operation and Service Manual

Title of Truck

Kenworth Pre-Delivery Inspection Record

Chassis Bill of Materials

Warranty File Applicable to the truck

Photographs of the Truck

Design and Engineering Drawings and schematics applicable to the truck as well as specific component parts of the truck

Design and Engineering drawings and schematics applicable to the Arctic Fox heater

Exemplar side mounted fuel tank and Artic Fox Heating and tubing

Defendant reserves the right to supplement this list in advance of trial.

XII.  Proposed Juror Questions to be Addressed to the Venire

PACCAR's proposed voir dire questions are attached hereto as Exhibit B submitted by the parties and attached herewith.

| The Plaintiff,<br><br>JOSEPH W. WALSH,<br><br>By his Attorney,<br>WILLIAMS & ASSOCIATES<br><br><br>/s/Christopher S. Williams<br>Christopher S. Williams, BBO# 546411<br>Williams & Associates<br>11 Beacon St. – Suite 1100<br>Boston, MA  02108<br>(617) 303-0909 | The Defendant,<br><br>PACCAR INC,<br><br>By its Attorneys,<br>CAMPBELL CAMPBELL EDWARDS<br>& CONROY, P.C.,<br><br>Kathleen M. Guilfoyle<br>James M. Campbell, BBO# 541882<br>Kathleen M. Guilfoyle, BBO# 546512<br>One Constitution Plaza<br>Boston, MA  02129<br>(617) 241-3000 |
|---|---|