UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH W. WALSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO. 04-10304-MBB |
| | ) | |
| PACCAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
ON THE PLAINTIFF'S NEGLIGENT DESIGN CLAIM
<u>DUE TO LACK OF EXPERT TESTIMONY</u>

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, the defendant, PACCAR Inc. ("PACCAR"), moves to exclude the plaintiff, Joseph Walsh ("the plaintiff"), from offering evidence to support his claim that the design of the 1988 Kenworth Model K100E truck ("the truck") was defective. As grounds for the motion, PACCAR states that the plaintiff has not identified an expert who will offer testimony at trial to support his negligent design defect claim. In the absence of expert testimony, the plaintiff cannot meet his burden of proof on this claim as a matter of law. Any evidence the plaintiff may seek to present in furtherance of this non-viable claim is therefore irrelevant. To the extent that the evidence is marginally relevant, such relevance is outweighed by the danger of unfair prejudice to PACCAR and confusion of the issues.

## FACTS

The plaintiff is an experienced commercial trucker who alleges that he sustained burn injuries to his right leg after his right foot came into contact with a heater hose connected to an Artic Fox Fuel heater in the left fuel tank of the truck. The plaintiff

alleges in his Complaint that PACCAR was negligent in designing the truck. In particular, the plaintiff alleges that the placement of the radiator hose in the fuel tank was a defective and unreasonably dangerous condition. The plaintiff also alleges that the radiator hose should have been guarded in some unspecified fashion.

In January, 2006, the plaintiff was deposed. The plaintiff offered the following testimony in connection with his defective design claim:

Q. [Your answers to interrogatories state . . .] 'that the fact that the radiator hose that went into the fuel tank was exposed, and in the path of travel was a defective and unreasonably safe condition . . .' What evidence do you have of that?

A. Evidence?

Q. Yes.

A. That's just my belief.

. . .

Q. Do you have any evidence that the radiator hose was defective?

A. I don't have any evidence, no.

Deposition of Joseph Walsh at 120, l. 13-121, l. 12.

The plaintiff also testified that as part of his claim he contends "there should have been some kind of a safety device covering it to prevent anybody from stepping on it." Deposition of Joseph Walsh at 129, l. 7-10. In addition, the plaintiff alleges that the materials the hose was made of rendered it defective, yet he has offered no evidence that the use of an alternate material for the hose is feasible. The plaintiff offered the following deposition testimony on this issue:

Q. Do you have any evidence that steel tubing would have been feasible for the purpose for which these hoses were used?

A. No, no.

2

Deposition of Joseph Walsh at 131, l. 15-18.

In his answers to interrogatories, the plaintiff made the following affirmative statement with respect to the truck's compliance with industry standards:

<u>INTERROGATORY 14</u>

> If the plaintiff claims that the subject truck or any component part of the truck failed in any way to comply with any federal, national, state, local, municipal, or industry law, statute, regulation, standard, or requirement in effect on the date of the incident, please specify each law, statute, standard, requirement, or regulation with which the subject truck allegedly failed to comply, and the precise manner in which the subject truck or any component part allegedly failed to so comply.

<u>ANSWER 14</u>

> I am currently unaware of any such industry law, regulation, or standard.

Joseph Walsh's Answers to Interrogatories, attached hereto as <u>Exhibit A</u>.

The plaintiff also testified at his deposition as follows:

Q.   . . . I want to make sure your answer is you're unaware of any industry law, regulation or standard that Kenworth violated?

A.   Right. I'm – I don't know of any.

Deposition of Joseph Walsh at 114, l.23-24; 115, l. 1-3.

In October, 2005, Richard Sedgley, Manager of Product Safety and Compliance for PACCAR, was deposed. Mr. Sedgley obtained a Bachelor of Science in Civil Engineering with an emphasis on structural analysis from the University of Washington in 1968. Since that time he has developed expertise in truck design. Mr. Sedgley testified regarding PACCAR's program for compliance with Federal Motor Vehicle Safety Standards, Federal Motor Carrier Safety Regulations, and industry practices such as those developed by the Truck Manufacturers Association. Deposition of Richard Sedgley at 13, l. 15-14, l. 1-17. Particularly with respect to the fuel tank, Mr. Sedgley

3

testified regarding drop tests performed on the tank and the process of qualifying the design as required by the Federal Motor Carrier Safety Regulations. Deposition of Richard Sedgley at 82, l. 25-83, l. 21.

## ARGUMENT

I. The Plaintiff Should Not Be Permitted to Offer Evidence on His Claim Negligent Design Claim Because He Cannot Meet the Burden of Proof on This Claim as a Matter of Law.

Findings of fact as to technical matters beyond the scope of ordinary experience are not warranted in the absence of expert testimony supporting such findings. Liacos, *Massachusetts Evidence,* § 7.6.2 at 386 (6th ed. 1994). Under Massachusetts law, the plaintiff must present expert testimony in a product liability action unless the case falls within the class of cases where a jury can find, of their own lay knowledge that a design defect exists. Smith v. Ariens Co., 375 Mass. 620, 625 (1978).

The plaintiff has dismissed his breach of warranty claims against PACCAR, leaving only his negligent design and negligent failure to warn clams. In a products liability action, regardless of whether the claim is premised on a theory of negligence or breach of warranty, the burden is on the plaintiff to show by a preponderance of the evidence that the product was somehow defective, and that the defect in the product caused the plaintiff's damages. Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993); Hayes v. Ariens Co., 391 Mass. 407, 413 (1984), abrogated on other grounds by Vassallo v. Baxter Healthcare Corp., 428 Mass. 1 (1998). In addition, the plaintiff is required to present expert testimony to establish the causal relationship between the alleged defect and the plaintiff's alleged damages. Godfreddo v. Mercedes-Benz Truck Company, Inc. 402 Mass. 97, 103-104 (1988). In this case, the presence of a defect, as well as the causal

4

link between the alleged defect and the plaintiff's accident, cannot be inferred without the aid of expert testimony. See Enrich, 416 Mass. at 87. The only way that the plaintiff can meet his burden of proof on his defective design claim in this case is through the testimony of an expert witness. See, e.g., Id.; Triangle Dress, Inc. v. Bay State Service, Inc., 356 Mass. 440, 441-442 (1969); Gynan v. Jeep Corp., 13 Mass. App. Ct. 504, 508 (1982); Wiska v. St. Stanislaus Social Club, Inc., 7 Mass. App. Ct. 813, 821 (1979); Morrell v. Precise Engineering, Inc., 36 Mass. App. Ct. 935, 936 (1994) (rescript).

The present case involves technical issues beyond the realm of the average juror's knowledge and experience. To determine whether PACCAR designed the truck with reasonable care, the jury will be required to weigh several factors, including the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, the adverse consequences to the product and to the consumer that would result from an alternative design, and whether the proposed modification would cause undue interference with the performance of the product. Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 15-16 (1st Cir. 2001); Back v. Wickes, 375 Mass. 633, 642 (1978). The jury in this case cannot reasonably evaluate each of these factors without the guidance of expert testimony. In particular, the plaintiff has not presented any evidence with respect to the mechanical feasibility of an alternative design.

The plaintiff alleges that the placement of the Artic Fox Heater in the left fuel tank, the location of the steps on the side-mounted fuel tanks, the type of material used for the hoses connected to the fuel tank, and the absence of a guard over those hoses was negligent. In order to prove his case, the plaintiff will have to present expert testimony of

the design of the side-mounted fuel tank, the standards of design at the relevant time period, alternatives to the design, as well as the expense of such alternatives, and the feasibility of any proposed guard. The plaintiff has not identified any evidence that he intends to present on any of these issues. In a negligent design case, the plaintiff presents a case for the jury when an available and feasible design modification. See Colter v. Barber-Greene Co., 403 Mass. 50, 57 (1988). The design of the truck's fuel system involves the interaction of a multitude of component parts. The plaintiff has presented no evidence that a change in the placement of the heater is feasible, that the use of steel tubing for the hoses is feasible, and that a guard over the heater is feasible. The plaintiff should be precluded from offering testimony as to his theories of design defect because he has offered no expert testimony that an alternate configuration is feasible and sensible from a design perspective, or that such configuration would be certified as required by federal regulations.

The subject of the design of the fuel tank and the relative placement of the fuel tank heater and hoses involves a question of compliance with federal and other standards. Moreover, the subject of this case also involves an inquiry into the state of the art in 1988 when the truck was manufactured. See Gynan v. Jeep Corp., 13 Mass. App. Ct. 504, 508 (1982) (distinguishing complex design issues requiring expert testimony from the relative simplicity of the design defect alleged in Smith). The plaintiff has presented no evidence that the design as configured by Kenworth did not comply with all applicable standards. Conversely, PACCAR's Manager of Product Safety and Compliance testified during his deposition regarding the fuel tank's compliance with the applicable standards.

II.   **The Plaintiff Should Be Precluded from Offering Lay Opinion Testimony on the Defect Issue.**

The opinion of non-experts cannot substitute for testimony of experts on the issues of defect and causation in products liability cases such as this that involve technical issues beyond the realm of the average juror's knowledge and experience. Enrich, 416 Mass. at 87. It is not enough for the plaintiff to introduce his own lay testimony that the design of the truck is defective, particularly given his admission that he has no evidence to support the defect claim and the undisputed fact that the truck complied with all applicable standards. Such testimony would invite the jury, if it finds the plaintiff's testimony credible, to speculate as to whether a particular design is defective simply because an accident occurred. Under Fed. R. Evid. 701, a lay witness may only offer testimony in the form of opinions or inferences that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The plaintiff should not be permitted to offer an opinion that the placement of the radiator hose and the absence of a guard on the hose constitute defects. Any such opinion must be based on "scientific, technical, or other specialized knowledge" and, pursuant to Fed. R. Evid. 701, cannot be offered by a lay witness

## CONCLUSION

In the absence of expert testimony on the issue of defect, any finding of liability by the jury in this case would be impermissibly based upon unfounded theories, speculation, and conjecture. See Alholm v. Wareham, 371 Mass. 621, 627 (1976). Only expert testimony, sufficiently grounded in evidence, can provide a reasonable basis for

7

the jury in this case to determine the highly technical question of whether the design of the 1988 Kenworth Model K100E truck was defective. See <u>Stewart v. Worcester Gas Light Co.</u>, 341 Mass. 425, 435 (1960).

For the above-stated reasons, PACCAR Inc. requests that its motion be allowed and that the plaintiff be precluded from proceeding on his negligent design claim in the absence of expert testimony.

**PACCAR Inc.**
By its attorneys,
CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.

/s/ Kiley M. Belliveau
James M. Campbell, BBO# 541882
Kathleen M. Guilfoyle, BBO# 546512
Kiley M. Belliveau, BBO# 661328
One Constitution Plaza, Third Floor
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
kguilfoyle@campbell-trial-lawyers.com
kbelliveau@campbell-trial-lawyers.com

## **CERTIFICATE OF SERVICE**

    I, Kiley M. Belliveau, of Campbell Campbell Edwards & Conroy, PC, attorney for PACCAR Inc., hereby certify that a true copy of the above document was served upon the following counsel of record for the plaintiff by means of the CM/ECF system on March 1, 2007:

Christopher S. Williams
Williams & O'Leary, LLP
11 Beacon St – Suite 1100
Boston, MA  02108


                                            /s/ Kiley M. Belliveau